**PHILLIPS & ASSOCIATES**

*Attorneys at Law*
45 BROADWAY, SUITE 430, NEW YORK, NEW YORK 10006
TEL: (212) 248-7431 FAX: (212) 901-2107
WWW.NYCEMPLOYMENTATTORNEY.COM
A PROFESSIONAL LIMITED LIABILITY COMPANY

October 12, 2021

**Via ELECTRONIC FILING**
Judge Marcia M. Henry
United States Magistrate Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      **RE:**    **Shonda Fernandez v. Wenig Saltiel LLP, et. al.**
             **Docket No. 19-CV-01979 (ENV) (MHH):**
             **Follow Up Letter Re: Defendant Greene's Social Media**

Dear Judge Henry:

      This office represents Plaintiff Shonda Fernandez in this matter. We write the Court pursuant to Your Honor's request that Plaintiff supply the Court with the factual basis for Plaintiff's request for access to Defendant Ira Greene's Facebook account (*See,* ECF Minute Entry dated, 10/12/2021).

      As an initial matter, Counsel for Defendant Greene incorrectly advised the Court that the Complaint made no reference to Mr. Greene accessing the internet from his computer at work and so Plaintiff's request for access to Mr. Green's Facebook account is a (purported) "*fishing expedition.*" This is false and concerning given the fact that Counsel has been representing Mr. Greene in this case since its inception and should understand the allegations. **At paragraphs 23-25 of the Complaint**, Plaintiff, through her original attorney and from the very outset of this case, asserted the following:

> 23. Indeed, from August 2018 and continuing virtually on a daily basis throughout Plaintiff's entire employment, Mr. Greene watched videos of African American women and children being hung from trees and set on fire and African American women in particular being raped and killed, **all from his office computer** and within earshot of the rest of the staff. **He also routinely and loudly played confederate anthems and marches.**

> 24. Flabbergasted at these vile and threatening videos, Plaintiff immediately and consistently asked Mr. Greene to stop playing them. Rather than comply, he doubled down stating **that the videos were from a website belonging to a white supremacy group in which he is an active member**, further adding to Plaintiff's fear and anxiety at work.

25. **Throughout her employment - from August 2018 through February 2019 - Plaintiff consistently complained to Mr. Saltiel about the videos Mr. Greene watched and even <u>requested that his internet usage be blocked or, at minimum, restricted</u>.** [*emphasis supplied*]

(*See* **Complaint ¶¶ 23-25**)

At Mr. Greene's continued deposition on 9/23/2021, Mr. Greene readily admitted to, and proudly boasted about, the fact that he did access confederate material (*i.e.* confederate theme songs and anthems) while in his office and on the computer supplied to him by the firm, Defendant Wenig Saltiel. Mr. Greene identified some of these ballads by name as well and confirmed that he played them through speakers on his computer (Exh. A, Greene Depo. 168:14 – 170)

As for Plaintiff's request for access to Defendant Greene's social media (namely, Facebook), Mr. Greene testified that he accessed Facebook from his computer in the Wenig Saltiel office (Exh. A, Greene Depo. 179:10 – 182). Mr. Greene testified that he did not use any other social media other than Facebook while in his office (*Id.* at 179:14).

Finally, Plaintiff's former counsel supplied us with the front page of Mr. Green's Facebook profile, along with some pages that references Mr. Green's "likes," Facebook groups that Mr. Greene "follows" and his other group activities (*See* Exhs B1-B4, I. Green's Facebook cover page and related items). Among other things, Mr. Greene clearly has an interest in Confederate groups, confederate activities and civil war era <u>southern</u> heritage, including but not limited to pages entitled, "I am proud of my Confederate ancestors," "sons of Confederate veterans," "United Daughters of the Confederacy," "Sons of Robert E. Lee," and other confederate-related content. (*See, <u>Id</u>*.) Interestingly, though there are <u>many</u> confederate pages referenced on Mr. Greene's Facebook, there seems to be no pages equally related to the Union.

Nevertheless, if: **[1]** Plaintiff alleges that she observed Defendant Greene accessing this confederate material on his work computer; **[2]** Mr. Greene accessed his Facebook page from his computer in his office at work; **[3]** Facebook was the only social media he claims to have accessed from his office computer; and **[4]** Mr. Greene (admittedly) played confederate songs and accessed confederate material from that computer in his office, then his Facebook page, his activities thereon and his computer become discoverable in this case. The allegations in the complaint, along with Mr. Greene's and Ms. Fernandez's testimonies makes his Facebook account, as well as his office computer, relevant. Though Defendants and their counsels were aware of these allegations before that computer was removed from the office, Counsels advised the Court that Defendants, who are lawyers and should understand spoilation rules, claim that they had the computer inspected and then got rid of the computer.

In any event, "although the law regarding the scope of discovery of electronically stored information ("ESI") is still unsettled, there is no dispute that social media information may be a source of relevant information that is discoverable." <u>Reid v. Ingerman Smith LLP</u>, 2012 U.S. Dist. LEXIS 182439, at *1-3 (E.D.N.Y. 2012), *citing,* <u>Sourdiff v. Texas Roadhouse Holdings, LLC</u>, 2011 WL 7560647, at *1 (N.D.N.Y. 2011). "For example . . . when asserting claims of sexual harassment or discrimination as in this action, some courts have found that 'Facebook usage

depicts a snapshot of the user's relationships and state of mind at the time of the content's posting'." *Id*., *citing*, Bass v. Miss Porter's School, 2009 U.S. Dist. LEXIS 99916 at *1 (D. Conn. 2009) (production of all Facebook materials ordered following in camera inspection "a number of communications . . . that are clearly relevant to this action"); *see also,* Glazer v. Fireman's Fund Ins. Co., 2012 U.S. Dist. LEXIS 51658 at *1 (S.D.N.Y. 2012) (in employment discrimination case, plaintiff's chats with online psychic revealed her "work performance, relationships with co-workers, views regarding her treatment . . . emotional state before, during and after her employment.")

Accordingly, though Plaintiff alleged that she witnessed Mr. Greene viewing questionable material on his computer, the ongoing representation by Defendants and their Counsel to date is that employees' internet access and usage were blocked and that it was impossible for Defendant Greene to access the internet at Wernig Saltiel. As Defendants and their counsels are all officers of the Court, I took their words for it. We did not seek to review Mr. Greene's social medica until we deposed Mr. Greene to find out what social media he actually viewed in the office in order to avoid a broad fishing expedition. Once we learned that he did, in fact, access Facebook from that computer at work and that Facebook was the only social media Mr. Greene claims he accessed, we then had a good faith basis to seek Mr. Greene's Facebook account and we sought the subpoena at issue. It is our position that Mr. Greene's Facebook data should be turned over to Plaintiff for discovery and inspection.

We thank Your Honor for your kind consideration.

Respectfully Submitted,

**/S/**

Gregory Calliste, Jr.

CC: Michael Biniakewitz, Esq. (*via ECF*)
Liane Fisher, Esq. (*via ECF*)

3