UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
SHONDA FERNANDEZ,

                Plaintiff,

     -against-                          Case No. 19-CV-01979-AMD-MMH

WENIG SALTIEL LLP, IRA GREENE,
JEFFREY L. SALTIEL, and MERYL L. WENIG,

                Defendants.
----------------------------------------------------------X

## MEMORANDUM OF LAW IN SUPPORT OF
## MOTION FOR SUMMARY JUDGMENT

## <u>TABLE OF CONTENTS</u>

Preliminary Statement…………………………………………………………………… .…1

Argument………………………………………………………………………………… 2

The Applicable Summary Judgment Standard……………………………………………... 2

POINT I.     Plaintiff's Race Discrimination and Retaliation Claims Fail as a Matter of Law. ..4

    A.     There Was No Adverse Action Other Than Plaintiff's Termination……………..4

    B.     The Record Does Not Support an Inference That Plaintiff's Termination was Based Upon Her Membership In A Protected Class………………………. 6

    C.     The Record Does Not Support an Inference of Retaliatory Termination……..…7

    D.     Even If Plaintiff Could Establish a Prima Facie Case, Moving Defendants Had Legitimate Grounds for Termination…………………………………….10

    E.     Plaintiff Cannot Show the Grounds for Termination Were Pretextual…………15

POINT II     Plaintiff's Hostile Work Environment Claims Fail as a Matter Of Law………..17

    A.     Plaintiff Fails to Establish a Hostile Work Environment………………………17

    B.     The Record Is Devoid of Tangible Support for Plaintiff's Claims…………….20

CONCLUSION…………………………………………………………………...22

1

# TABLE OF AUTHORITIES

Page(s)

Cases

*Alfano v. Costello*,
   294 F.3d 365 (2d Cir. 2002) ....................................................................... 17, 18, 19

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986) ................................................................................................ 2, 3

*Ashok v. Barnhart*,
   289 F.Supp.2d 305 (E.D.N.Y 2003) ............................................................................ 9

*Barlow v. Male Geneva Police Officer Who Arrested Me on Jan.*,
   434 Fed. Appx. 22 (2d Cir. 2011) ................................................................................ 2

*Bolden v. PRC Inc.*,
   43 F.3d 545 (10th Cir. 1994) ..................................................................................... 19

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) .................................................................................................... 2

*Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*,
   140 S. Ct. 1009 (2020) ................................................................................................ 5

*Cunningham v. Consol. Edison, Inc.*,
   2006 U.S. Dist. LEXIS 22482, at *55 (E.D.N.Y. Mar. 28, 2006) ....................... 9, 15

*DelaPaz v. N.Y.C. Police Dep't*,
   2003 U.S. Dist. LEXIS 13810, at *8 (S.D.N.Y. Aug. 6, 2003) ................................ 16

*Dhar v. New York City DOT*,
   2014 U.S. Dist. LEXIS 134846, (E.D.N.Y. Sept. 24, 2014), at *18 .................... 4, 15

*Farmer v. Patino*,
   2020 US Dist LEXIS 162906, at *11-12 (E.D.N.Y. Sept. 4, 2020) .......................... 2

*Furfero v. St. John's Univ.*,
   94 A.D.3d 695 (2d Dep't 2012) .................................................................................. 5

*Galabya v. New York City Bd. of Educ.*,
   202 F.3d 636 (2d Cir. 2000) ................................................................................... 5, 6

*Harris v. Forklift Sys., Inc.*,
   510 U.S. 17 (1997) ............................................................................................. 16, 19

*Hongyan Lu v. Chase Inv. Servs. Corp.*,
   412 F. App'x 413 (2d Cir. 2011) .......................................................................... 10, 15

*Hussein v. Hotel Employees & Restaurant Union, Local 6*,
   108 F.Supp.2d 360 (S.D.N.Y. 2000) .......................................................................... 9

*James v. N.Y. Racing Assn*,
   233 F.3d 149 (2d Cir. 2000) ....................................................................................... 5

*Jean v. Acme Bus Corp.*,
   2012 U.S. Dist. LEXIS 134127, at *27 (E.D.N.Y. Sept. 19, 2012) .......................... 7

*Kolenovic v. ABM Indus., Inc.*,
   2012 N.Y. Misc. LEXIS 3560, at *15 (Sup. Ct. N.Y. Co. July 23, 2012) .............. 19

*Lamberson v. Six West Retail Acquisition, Inc.*,
  122 F.Supp.2d 502 (S.D.N.Y. 2000) .................................................................. 9

*Lugo v. City of New York*,
  518 Fed. Appx. 28 (2d Cir. 2013).................................................................. 8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
  475 U.S. 574 (1986) .................................................................. 3

*McDonnell Douglas Corp. v. Green*,
  411 U.S. 792 (1973) .................................................................. 4

*Meiri v. Dacom*,
  759 F.2d 989 (2d Cir. 1985) .................................................................. 2

*Mitchell v. Northern Westchester Hosp.*,
  171 F. Supp. 2d 274 (S.D.N.Y. 2001) .................................................................. 4

*Mormol v. Costco Wholesale Corp.*,
  364 F.3d 54 (2d Cir. 2004) .................................................................. 18

*Mudholkar v. Univ. of Rochester*,
  2000 U.S. App. LEXIS 25208, at *5 (2d Cir. Oct. 4, 2000) .................................................................. 6

*Oncale v. Sundowner Offshore*,
  523 U.S. 75 (1998) .................................................................. 17

*O'Neal v. State Univ. of N.Y.*,
  2006 U.S. Dist. LEXIS 81654, at *48 (E.D.N.Y. Nov. 7, 2006).................................................................. 15

*Pagan v. N.Y. State Div. of Parole*,
  2003 U.S. Dist. LEXIS 20752, at *19 (S.D.N.Y. Nov. 18, 2003).................................................................. 18

*Patterson v. County of Oneida*,
  375 F.3d 206 (2d Cir. 2004) .................................................................. 5

*Perry v. Ethan Allen, Inc.*,
  115 F.3d 143 (2d Cir. 1997) .................................................................. 17

*Podell v. Citicorp Diners Club*,
  112 F.3d 98 (2d Cir. 1997) .................................................................. 3, 20

*Ponticelli v. Zurich American Ins. Group*,
  16 F.Supp.2d 414 (S.D.N.Y. 1998) .................................................................. 9

*Potash v. Fla. Union Free Sch. Dist.*,
  972 F. Supp. 2d 557 (S.D.N.Y. 2013) .................................................................. 7

*Prabir Dhar v. New York City DOT*,
  2014 U.S. Dist. LEXIS 134846, at *17 (E.D.N.Y. Sept. 24, 2014) .................................................................. 4

*Quinn v. Green Tree Credit Corp.*,
  159 F.3d 759 (2d Cir. 1998) .................................................................. 9, 14, 15, 18

*Reed v. A.W. Lawrence & Co.*,
  95 F.3d 1170 (2d Cir. 1996) .................................................................. 10

*Richardson v. New York State Dept. of Corr. Serv.*,
  180 F.3d 426 (2d Cir. 1999) .................................................................. 17, 18, 20

*Ruiz v. Cnty. of Rockland*,
  609 F.3d 486 (2d Cir. 2010) .................................................................. 8

*Schwapp v. Town of Avon*,
  118 F.3d 106 (2d Cir. 1997) .................................................................. 18

*Shankle v. Andreone,*
  2009 U.S. Dist. LEXIS 88293, at *7 (E.D.N.Y. Sept. 25, 2009) ........................................ 3, 20
*Short v. Deutsche Bank Sec., Inc.,*
  79 A.D.3d 503 (1st Dep't 2010) ........................................................................................... 19
*St. Mary's Honor Ctr. v. Hicks,*
  509 U.S. 502 (1993) ................................................................................................................ 5
*Tomka v. Seiler Corp.,*
  66 F.3d 1295 (2d Cir. 1995) ................................................................................................... 8
*Wanamaker v. Columbian Rope Co.,*
  108 F.3d 462 (2d Cir. 1997) ................................................................................................... 6
*Weinstock v. Columbia Univ.,*
  224 F.3d 33 (2d Cir. 2000) ..................................................................................................... 2
*Western World Ins. Co. v. Stack Oil, Inc.,*
  922 F.2d 118 (2d Cir. 1990) ................................................................................................... 3
*Williams v. New York Ciry Hous. Auth.,*
  61 A.D.3d 62 (1st Dep't 2009) ............................................................................................. 17
*Ximines v. N.Y.C. Dept of Educ.,*
  2011 U.S. Dist. LEXIS 71381, at *7 (E.D.N.Y. July 1, 2011) ............................................... 2

Statutes

42 U.S.C. §1981 ....................................................................................................................... 1, 5
New York State Executive Law §290 ........................................................................................... 1

Rules

Fed. R. Civ. P. 56 .......................................................................................................................... 1
Fed. R. Civ. P. 56(a) ..................................................................................................................... 2
Fed. R. Civ. P. 56(e) ..................................................................................................................... 2
New York City Administrative Code §§ 8-101, *et seq.* ................................................................. 1

## PRELIMINARY STATEMENT

Plaintiff Shonda Fernandez ("Plaintiff"), formerly employed by Wenig Saltiel LLP, brings this action against Defendants Wenig Saltiel LLP, Meryl L. Wenig, Jeffrey L. Saltiel, and Ira Greene ("Defendants"), pursuant to 42 U.S.C. § 1981 and New York state law, including claims under the New York State Human Rights Law ("NYSHRL"), New York State Executive Law §§ 290, et seq., the New York City Human Rights Law ("NYCHRL"), and New York City Administrative Code §§ 8-101, *et seq.* Plaintiff claims that she was discriminated against and subjected to a hostile work environment on the basis of race, and that Defendants retaliated against her for complaining about the alleged discriminatory treatment.

Defendants Wenig Saltiel LLP, Meryl L. Wenig, and Jeffrey L. Saltiel ("Moving Defendants") now move for summary judgment, pursuant to Rule 56 of the Federal Rules of Civil Procedure. First of all, Plaintiff's wrongful termination and retaliation claims fail as a matter of law, as Plaintiff was terminated for nondiscriminatory reasons only, and cannot demonstrate that the reasons provided for her termination were pretextual. Secondly, Plaintiff's hostile work environment claims fail as a matter of law, as her allegations, even taken as true, do not rise to the level of severe or pervasive behavior required to establish a hostile work environment. Moreover, the only record evidence in support of Plaintiff's claims of a hostile work environment consists of Plaintiff's self-serving testimony, which is refuted by both contemporaneous documentary evidence and the testimony of all of the other deponents/affiants.

## STATEMENT OF FACTS

For a full statement of the material facts as to which there is no genuine issue to be tried, the Court is respectfully referred to Moving Defendants' Local Civil Rule 56.1 Statement of Undisputed Material Facts, dated March 24, 2023 ("SUMF").

1

## ARGUMENT

## THE APPLICABLE SUMMARY JUDGMENT STANDARD

A party is entitled to summary judgment where, as here, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986).

"A fact is 'material' for the purposes of summary judgment when it 'might affect the outcome of the suit under the governing law,' and an issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Farmer v. Patino*, 2020 US Dist LEXIS 162906, at *11-12 (E.D.N.Y. Sept. 4, 2020) (citing *Barlow v. Male Geneva Police Officer Who Arrested Me on Jan. 2005*, 434 Fed. Appx. 22, 25 (2d Cir. 2011)).

To carry its initial burden, the party moving for summary judgment must show that "there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). A moving party need only show the absence of proof of any of the essential elements of the non-movant's case. *Id.*, 477 U.S. at 323. Once a properly supported motion for summary judgment has been made, the burden shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *See* Fed. R. Civ. P. 56(e).

Summary judgment is appropriate in discrimination cases, even where discriminatory animus may implicate questions of intent and causation. *Ximines v. N.Y.C. Dept of Educ.*, 2011 U.S. Dist. LEXIS 71381, at *7 (E.D.N.Y. July 1, 2011) (granting summary judgment and finding that "the purpose of summary judgment would be 'rendered sterile . .. if the mere incantation of intent or state of mind would operate as a talisman to defeat an otherwise valid motion.'") (quoting *Meiri v. Dacom*, 759 F.2d 989, 998 (2d Cir. 1985)); *see also Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (observing that the "impression that summary judgment is

2

unavailable to defendants in discrimination cases is unsupportable") (internal quotation marks and citation omitted).

Thus, Plaintiff cannot withstand this motion by providing evidence that is merely colorable, conclusory, or speculative; rather, Plaintiff must present "concrete evidence from which a reasonable [fact-finder] could return a verdict in [her] favor." *Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). *See also Western World Ins. Co. v. Stack Oil, Inc.*, 922 F.2d 118, 121 (2d Cir. 1990) (nonmoving party "cannot 'escape summary judgment merely by vaguely asserting the existence of some unspecified disputed material facts,' or defeat the motion through 'mere speculation or conjecture.'") (internal citations omitted).

Furthermore, "'bald assertions' cannot overcome a motion for summary judgment, and the court must have 'some basis to believe that [plaintiff's] version of the relevant events is not fanciful.'" *Shankle v. Andreone*, 2009 U.S. Dist. LEXIS 88293, at *7 (E.D.N.Y. Sept. 25, 2009) (citing *Podell v. Citicorp Diners Club*, 112 F.3d 98, 101 (2d Cir. 1997)). In sum, Plaintiff "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

Here, the purportedly disputed facts are neither material to the claims, nor genuine in nature. Indeed, any allegedly disputed issues concerning Plaintiff's termination cannot be considered material, as the record unambiguously supports the conclusion that Wenig Saltiel LLP had multiple non-retaliatory and non-discriminatory grounds upon which to terminate Plaintiff, such that the decision to do so was not pretextual. Moreover, notwithstanding that Plaintiff has put forth a fanciful narrative concerning her employment at Wenig Saltiel LLP, Plaintiff's contentions - - even if taken at face value - - do not rise to the level of a hostile work environment. Aside from a singular apology letter from a non-employee, Plaintiff proffers no

3

supporting evidence other than her own incoherent testimony. Given the absence of any genuine issues of fact as to Plaintiff's claim of a hostile work environment, Moving Defendants are entitled to summary judgment dismissing all of Plaintiff's claims.

## POINT I

### PLAINTIFF'S RACE DISCRIMINATION AND RETALIATION CLAIMS FAIL AS A MATTER OF LAW

"The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff, and if the plaintiff has failed to show that there is evidence that would permit a rational factfinder to infer that the employer's proffered rationale is pretext, summary judgment dismissing the claim is appropriate." *Prabir Dhar v. New York City DOT*, 2014 U.S. Dist. LEXIS 134846, at *17 (E.D.N.Y. Sept. 24, 2014) (citations and internal quotations omitted). Accordingly, the "plaintiff must show more than the mere suffering of an adverse employment consequence by a member of a protected class." *Dhar*, 2014 U.S. Dist. LEXIS 134846, at *18.

Plaintiff's discrimination claims are governed by the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, Plaintiff must first establish a *prima facie* case by demonstrating that: "1) she is a member of a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination." *Norville v. Staten Island Univ. Hosp.*, 196 Fad 89, 95 (2d Cir. 1999). However, "[i]f Plaintiff fails to make out any of these four criteria, the case must be dismissed." *Mitchell v. Northern Westchester Hosp.*, 171 F. Supp. 2d 274, 278 (S.D.N.Y. 2001).

4

Assuming Plaintiff meets each of the foregoing criteria, the burden of production shifts to Defendant to articulate a legitimate, nondiscriminatory reason for its action. *Fisher v. Vassar College*, 1 14 F.3d 1332, 1335-36 (2d Cir. 1997). Once Defendant satisfies its burden, Plaintiff bears the ultimate burden of persuasion, and must demonstrate that Defendant's justification is a pretext for unlawful discrimination. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993); *James v. N.Y. Racing Assn*, 233 F.3d 149, 154 (2d Cir. 2000) ("[T]he employer will be entitled to summary judgment...unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination"). NYSHRL and NYCHRL claims likewise apply the *McDonnell* burden-shifting framework. *Furfero v. St. John's Univ.*, 94 A.D.3d 695 (2d Dep't 2012). The same is true for Section 1981 claims. *Patterson v. County of Oneida*, 375 F.3d 206, 226 (2d Cir. 2004). Section 1981 claims, however, require an additional showing that race was the but-for-cause of termination and disparate treatment. *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009 (2020).

For purposes of this motion, Moving Defendants concede that Plaintiff is a member of a protected class, was qualified for the position, and that her termination constitutes an adverse employment action. However, Plaintiff's conclusory allegations do not support the inference that her termination occurred under circumstances that give rise to an inference of discrimination or retaliation.

### A.    <u>There Was No Adverse Action Other Than Plaintiff's Termination</u>

The Second Circuit has held that "[t]o be 'materially adverse,' a change in working conditions must be more disruptive than a mere inconvenience or an alteration of job responsibilities." *Galabya v. New York City Bd. of Educ.*, 202 F.3d 636, 640 (2d Cir. 2000) (internal quotation omitted). Examples of adverse employment actions include "termination of

employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material loss of benefits, [or] significantly diminished material responsibilities[.]" *Id*. Plaintiff can establish none of these, aside from her termination.

Plaintiff's only other potential claim of adverse employment action is referenced in paragraph 40 of the Complaint, where Plaintiff alleges that "Ms. Wenig essentially demoted [Plaintiff] from office manager to paralegal/assistant and forced her to assume vital responsibilities for over 30 cases, with which Plaintiff was not familiar." Complaint ¶ 40. However, even accepted at face value, this does not constitute an adverse employment action.

First of all, it is undisputed that the role of Office Manager, at all times of Plaintiff's employment, included the responsibility to ensure proper management of specific cases. (SUMF ¶ 3) Secondly, Plaintiff does not dispute that she kept the same wage and benefits and the same title. Thus, even if there was a minor change in Plaintiff's job responsibilities, she did not have "significantly diminished material responsibilities." *Mudholkar v. Univ. of Rochester*, 2000 U.S. App. LEXIS 25208, at *5 (2d Cir. Oct. 4, 2000) (quoting *Galabya*, 202 F.3d at 640).

Similar to the plaintiff in *Mudholkar*, Plaintiff here "points to no record evidence demonstrating that [s]he suffered 'significantly diminished material responsibilities.'" *Id*. As in *Mudhokar*, Plaintiff here "has failed to make any showing of materiality because [s]he has offered no evidence, save [her] own unsupported, conclusory statements, that … [her] duties have been significantly altered." *Id*. (citing *Wanamaker v. Columbian Rope Co.*, 108 F.3d 462 (2d Cir. 1997) for the proposition that "loss of phone and office [are] not 'sufficiently deleterious to constitute adverse employment action.'").

Moreover, Plaintiff fails to provide any objective evidence that her job duties were "significantly altered," which is likewise fatal to her argument that this constitutes an adverse

employment action. *See Potash v. Fla. Union Free Sch. Dist.*, 972 F. Supp. 2d 557, 584 (S.D.N.Y. 2013) ("Changes in assignments or responsibilities that do not radical[ly] change the nature of work are not typically adverse employment actions. Moreover, a plaintiff must set forth *objective proof* that the alleged action was materially adverse.") (emphasis in original; internal citations omitted).

> **B.      The Record Does Not Support An Inference That Plaintiff's**
> **Termination Was Based Upon Her Membership In A Protected Class**

Plaintiff cannot establish that she was terminated under circumstances giving rise to an inference of discrimination. To establish that her termination was actionable, Plaintiff must provide direct evidence of discriminatory intent or circumstantial evidence demonstrating that Defendants treated her less favorably than a similarly situated employee outside her protected group. *See Jean v. Acme Bus Corp.*, 2012 U.S. Dist. LEXIS 134127, at *27 (E.D.N.Y. Sept. 19, 2012).

Other than her conclusory allegation, Plaintiff fails to offer any direct evidence of disparate treatment. Plaintiff's allegations of actual racial animus towards Plaintiff are all directed at Ira Greene. See Complaint generally. However, Plaintiff admits in her Complaint that it was Mr. Saltiel and Ms. Wenig who controlled "human resource matters, hiring and firing practices, promotions and compensation for employees." Complaint, ¶¶ 17, 18. Plaintiff also admits that it was Mr. Saltiel who terminated her. Complaint, ¶ 46. It is also uncontested that it was Mr. Saltiel and Ms. Wenig who made the decision to hire Plaintiff, thereby contravening her argument that she was terminated for her membership in a protected class.

Plaintiff also fails, in the alternative, to establish an inference of discrimination. Such an inference can be established by demonstrating that Plaintiff was treated less favorably than a

similarly situated employee outside her protected category. *Lugo v. City of New York*, 518 Fed. Appx. 28, 30 (2d Cir. 2013). However, Plaintiff and the individual selected for comparison purposes must be similarly situated "in all "material aspects" by being "(1) subject to the same performance evaluation and discipline standards and (2) engaged in comparable conduct." *Ruiz v. Cnty. of Rockland*, 609 F.3d 486, 493 (2d Cir. 2010).

Although Plaintiff alleges that she was treated less well than other employees because of her race (and that other employees outside of her protected class were treated more favorably), she failed to offer any evidence in support. Moreover, Plaintiff failed to identify any comparable employee by which her treatment could be judged. Plaintiff alleges that Ms. Wenig "regularly yelled at Plaintiff in front of other employees for trivial matters," "strongly chided her for allegedly making mistakes on cases," and "accused her of other infractions in email chains with the staff." Complaint, ¶ 41. While this may imply that Ms. Wenig is a demanding boss, nothing in the record suggests she didn't treat other employees similarly, regardless of their race.

### C.    The Record Does Not Support An Inference Of Retaliatory Termination

"In order to make out a prima facie case of retaliation, a plaintiff must show by a preponderance of the evidence i) participation in a protected activity known to the defendant; ii) an employment action disadvantaging the plaintiff; and iii) a causal connection between the protected activity and the adverse employment action." *Tomka v. Seiler Corp.*, 66 F.3d 1295, 1308 (2d Cir. 1995) (citations omitted).

Moving Defendants admit Plaintiff participated in protected activity by complaining about Ira Greene's behavior on December 10, 2018. (SUMF ¶ 11) Moving Defendants also admit Plaintiff was terminated on March 1, 2019. However, Moving Defendants dispute an inference of a causal connection between these two events.

8

Here, the sole factor linking these two events is temporal proximity. *See Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) However, "a passage of two months between the protected activity and the adverse employment action seems to be the dividing line." *Cunningham v. Consol. Edison, Inc.*, 2006 U.S. Dist. LEXIS 22482, at *55 (E.D.N.Y. Mar. 28, 2006). In that regard, the Court in *Cunningham* referenced the following line of cases:

> *Hussein v. Hotel Employees & Restaurant Union, Local 6*, 108 F.Supp.2d 360, 367 (S.D.N.Y. 2000) ("the passage of more than two months defeats any retaliatory nexus"); *Ponticelli v. Zurich American Ins. Group*, 16 F.Supp.2d 414, 436 (S.D.N.Y. 1998) (two-and-a-half months is "hardly the close proximity of time contemplated . . . for allowing a plaintiff to establish the "causal connection" element of retaliation claim"); *Ashok v. Barnhart*, 289 F.Supp.2d 305, 315 (E.D.N.Y 2003) ("a period of only two months between a protected activity and an adverse action may permit a reasonable jury to find the acts to be temporally proximate and causally related"); *Lamberson v. Six West Retail Acquisition, Inc.*, 122 F.Supp.2d 502, 512 (S.D.N.Y. 2000) (employee fired two months after making complaints was a sufficiently close temporal proximity to infer a causal connection); *Quinn*, 159 F.3d at 769 (discharge following less than two months after filing a complaint was sufficient evidence of a causal connection to preclude summary judgment).

*Id.*, 2006 U.S. Dist. LEXIS 22482 at 55-56.

Applying the standard enunciated in the foregoing cases, the passage of almost three months here between the two events would defeat any purported causal connection based solely upon temporal proximity.

**D.    Even If Plaintiff Could Establish A Prima Facie Case, Moving Defendants Had Legitimate Grounds for Termination**

Even if this Court found that Plaintiff established a prima facie case, the burden shifts to Defendant (under the *McDonnell* framework) to present a legitimate non-discriminatory and non-retaliatory reason for termination. In a discriminatory firing case, "once the plaintiff has

established a prima facie showing of discrimination, the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the employment action." *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 415 (2d Cir. 2011) (internal quotation and citation omitted). The same is true in retaliation cases. *See Reed v. A.W. Lawrence & Co.*, 95 F.3d 1170, 1178 (2d Cir. 1996) ("The allocation of burdens of proof in retaliation cases follows the general rules enunciated by the Supreme Court in *McDonnell Douglas Corp.*") (citations omitted).

Here, Moving Defendants have provided numerous non-discriminatory and non-retaliatory reasons for Plaintiff's termination. During deposition testimony, Mr. Saltiel provided the most exhaustive list of reasons for terminating Plaintiff:

A.    The reasons were a culmination of a mutuality of factors.

Q.    Which were what?

A.    Well, it was the problems that were created with staff constantly leaving the office based upon her conduct. It was the fact that certain things that had to be done from an administration level weren't being done. The fact that she was not in the office certain days. I questioned whether she was working or not. And ultimately, that the biggest part of her job that we made very clear numerous times, orally, in writing, on several occasions, was that the substantive paperwork of the firm, the clerical work and everything that we have that we maintain through our system, had to be cleared up, moved forward, addressed, on a timely basis by following up with the support staff. That just wasn't getting done. Because there were meetings that were held with her and Ms. Wenig, with her and myself, where we had reports, where things had to be – not even done, but updated in the computer system, that she had to update and so forth, or address, make calls, et cetera.

That just was not being done week after week after week. We made this very clear. It didn't get any better. It became a point that having an office manager there was basically an exercise in going back and forth asking to have things done, and having people talk to each other, and nothing at all was getting moved forward. The purpose of why we hired an office manager was not being

10

accomplished.

(SUMF ¶ 24)

Accordingly, Moving Defendant gave two reasons for terminating Plaintiff: (1) multiple employees had quit, citing Plaintiff as the reasons for their leaving; and (2) Plaintiff was underperforming and not fulfilling the obligations of her position, as she failed to ensure that the firm's administrative paperwork was complete, and was not showing up to work. The record demonstrates that these reasons are not post facto justifications for Plaintiff's termination.

i. Employees Quitting

The documentary evidence demonstrates that at least three employees had quit specifically because of Plaintiff's behavior during the six months of Plaintiff's employment. First of all, Natasha Laughton sent a resignation email on October 29, 2018 (SUMF ¶ 7) in which Ms. Laughton stated as follows:

> **It is well known that there have been some issues with the addition of the office manager Shonda Fernandez.**
>
> These issues were expressed in a staff meeting on September 13th 2018 in which the support staff was encouraged to have an open dialogue with management present. Following that meeting, **Shonda has created a very hostile work environment for me** which has not subsided. I mentioned this to Meryl in a meeting shortly after and was assured it would be resolved. I further met with Shonda on October 25th 2018 as per Jeff's instruction to discuss issues I was having with my work load and was offered no solutions but met with accusations of inaccurate/inflated billing of my time. I can also no longer work in an environment where I am continually berated at will in front of other employees by my office manager.
>
> I would like to help with the transition of my duties appropriately and intend to assist wherever possible in the next three weeks to make sure my replacement will be able to continue with my work successfully.

11

> I would like to sincerely thank you both for the opportunity to work at Wenig Saltiel LLP, and wish you and your staff the best.

(SUMF ¶ 7) (emphasis supplied).

Additionally, George Lopez sent his resignation letter on November 26, 2018, in which he made the following repeated references to Plaintiff: "I've been asked for blowjob tips from my office manager;" "called unprofessional by my office manager [Plaintiff]" for leaving the office despite his shift ending 45 minutes beforehand; and "[m]y boss [Plaintiff] takes me out for lunch for two hours to do her eyebrows and eye lashes." (SUMF ¶ 9)

Finally, Ming Davis sent her resignation email on February 28, 2019 (the day before Plaintiff was terminated) stating as follows:

> When I first started working here, I loved my job and enjoyed coming to work. The past approximately 6 months since the hire of office manager, Shonda Fernandez, I have experienced constant harassment and disrespect. I thought that upper management would have dealt with the issues that were the cause of the problem but instead they have been constantly ignored as if Shonda Fernandez's disrespectful treatment is acceptable. Regretfully I have to resign from my position.

(SUMF ¶ 22)

Notably all three of these resignations describe Plaintiff as being disrespectful to staff in such an extreme way that the employees felt compelled to quit (using words such as "harassment" and "hostile"). Moreover, the one-day time period between Ms. Davis' resignation letter (specifically calling out upper management - - Ms. Wenig and Mr. Saltiel - - for not taking firmer action against Plaintiff) and Plaintiff's termination provides strong temporal support for Moving Defendants' non-discriminatory and non-retaliatory reason for Plaintiff's termination. The legitimate reasons underlying Plaintiff's termination cannot be questioned, given the

complaints from three of Plaintiff's subordinates (who all chose to resign) regarding her behavior during her six months of employment

### ii. Poor Performance

Ms. Wenig and Mr. Saltiel both testified that there were issues with Plaintiff's performance from the beginning of her employment. (SUMF ¶ 4) Indeed, Plaintiff struggled with performing the basic functions of her job. For example, as early as August 22, 2018, Mr. Saltiel made contemporaneous notes of a meeting he held with Plaintiff regarding Plaintiff's failure to effectively manage the firm's paper flow. (SUMF ¶ 5) These performance issues continued throughout Plaintiff's employment. There were also many informal meetings between Plaintiff and Ms. Wenig (or Mr. Saltiel) about her performance issues. (SUMF ¶ 13) Thereafter, on January 28, 2019, a meeting was held with Mr. Saltiel, Ms. Wenig, Plaintiff, and Carleen Freckleton (Ms. Wenig's executive assistant) during which seven major issues were addressed concerning all aspects of Plaintiff's performance as office manager. (SUMF ¶ 16) On February 12, 2019, Mr. Saltiel distributed his notes from the meeting entitled "Takeaways from meeting held January 28, 2019." (SUMF ¶ 18)

Despite the gravity of the performance deficiencies identified on January 28, 2019, including Plaintiff's delegation of her duties of processing the intake of court filings, Plaintiff continued delegating her intake duties thereafter, as addressed in February 1, 2019 emails from both Ms. Wenig and Mr. Saltiel to Plaintiff. (SUMF ¶ 17) Thereafter, on February 14, 2019, Ms. Freckleton sent an email to the firm's partners as follows:

> If the staff rebels it's not because they are stubborn and do not want to work, but we are being treated as if we are second class citizens when it comes to the office manager [Plaintiff]. Her behavior is putting the firm at risk for valuable employees to seek employment elsewhere. It is unfair to ask people to work in this

> type of environment and not expect rebellion or repercussions. The work place will continue to be divided and hostile if the situation needs to be rectify[ied].

(SUMF ¶ 19)

On February 15, 2019, Mr. Saltiel followed up with an email to Plaintiff entitled "job duties," in which he directed Plaintiff to meet with him regarding 13 underlined items (initially raised at the January 28, 2019 meeting) which he "believe[d] [we]re not being sufficiently addressed." (SUMF ¶ 20) On February 26, 2019, Ms. Freckleton again wrote another email complaining about Plaintiff's performance as follows:

> We don't even know if Shonda is working from home or not. There is no clarity on anything when it comes to her but she wants to pretend as if she is managing the staff. It might seem minor but this kind of structure is not working. While you and Jeff are away, who is running the office? Now should be the time for her to shine and show you guys what she is made of instead but she is not doing it. If she doesn't care enough to do this job I do not want her giving me any kin[d] of instruction not matter how simple it is. There is no guidance or structure here and if I or NM have to jump in and supervise the issues with the staff we do not need Shonda.

(SUMF ¶ 21) Ms. Wenig responded that "[w]e know and it will be addressed in short fashion."

Poor performance suffices as a ground for termination. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998) ("Green Tree contends that it discharged Quinn due to her poor performance. . . . This offer of proof satisfies Green Tree's burden of articulating a legitimate, non-retaliatory reason for terminating Quinn.") As in *Quinn*, contemporaneous records here demonstrate Plaintiff's failure to perform her job duties. *Id.*

### E.  <u>Plaintiff Cannot Show The Grounds For Termination Were Pretextual</u>

"Once the defendant proffers a legitimate, nondiscriminatory [and non-retaliatory] reason for the challenged action, "the presumption of discrimination arising with the establishment of

14

the *prima facie* case drops from the picture." *Hongyan Lu v. Chase Inv. Servs. Corp.*, 412 F. App'x 413, 415 (2d Cir. 2011) (internal quotation and citation omitted). Instead, "the burden then shifts back to the plaintiff to come forward with evidence that the defendant's proffered, non-discriminatory reason is a mere pretext for actual discrimination [or retaliation]." *Id.* (internal quotation and citation omitted).

Plaintiff must produce "not simply some evidence, but sufficient evidence to support a rational finding that the legitimate, nondiscriminatory reasons proffered by the employer were false, and that more likely than not discrimination [or retaliation] was the real reason." *Id.*, 412 F. App'x at 416 (internal quotation and citation omitted).

In order "[t]o show that defendant['s] proffered explanation is merely a pretext, plaintiff must establish a genuine issue of material fact either through direct, statistical, or circumstantial evidence as to whether the employer's reason for [the termination of her employment] is false and as to whether it is more likely that a discriminatory reason motivated the employer." *Dhar*, 2014 U.S. Dist. LEXIS 134846, at *31 (citation and quotations omitted).

The requirement is similar for retaliation, but a plaintiff can demonstrate pretext based upon temporal proximity. *Quinn v. Green Tree Credit Corp.*, 159 F.3d 759, 769 (2d Cir. 1998). However, such temporal proximity must be closer to two months in duration. *Cunningham*, 2006 U.S. Dist. LEXIS 22482, at *55. Indeed, even shorter periods of time have been found to be insufficient where the grounds for termination, as here, are compelling. *O'Neal v. State Univ. of N.Y.*, 2006 U.S. Dist. LEXIS 81654, at *48 (E.D.N.Y. Nov. 7, 2006) (summary judgment for employer despite 1 ½ month time period). As the court in *O'Neal* observed, "the mere filing of a discrimination complaint cannot paralyze an employer from making personnel decisions." *Id.*, 2006 U.S. Dist. LEXIS 81654 at *49.

15

Aside from temporal proximity, nothing in the record supports a conclusion that Plaintiff's termination was pretextual, especially given Ms. Freckleton's February 2019 complaints about Plaintiff's performance and Ms. Davis' resignation the day before Plaintiff's termination. Therefore, even assuming the Court concludes that Plaintiff has made a prima facie showing of discrimination or retaliation, summary judgment is warranted in favor of Moving Defendants, given the legitimate grounds for Plaintiff's termination.

## POINT II

### PLAINTIFF'S HOSTILE WORK ENVIRONMENT CLAIMS FAIL AS A MATTER OF LAW

#### A.      Plaintiff Fails To Establish A Hostile Work Environment

Plaintiff contends that she was subject to a hostile work environment on the basis of race. In order to establish a prima facie case, Plaintiff must demonstrate that the alleged harassment was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1997). "The Second Circuit erected a remarkably high hurdle with respect to the level and frequency of offensive conduct that must be present in order to sustain" a hostile work environment claim. *DelaPaz v. N.Y.C. Police Dep't*, 2003 U.S. Dist. LEXIS 13810, at *8 (S.D.N.Y. Aug. 6, 2003). "The plaintiff must show that the workplace was so severely permeated with discriminatory intimidation, ridicule, and insult that the terms and conditions of her employment were thereby altered." *Alfano v. Costello*, 294 Fad 365, 373 (2d Cir. 2002).

In order to determine whether conduct is "sufficiently severe or pervasive," courts consider the following factors: (1) the frequency of the discriminatory conduct; (2) its severity; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance;

16

(4) whether the conduct unreasonably interfered with plaintiff's work; and (5) what psychological harm, if any, resulted from such conduct. *Richardson v. New York State Dept. of Corr. Serv.*, 180 F.3d 426, 437 (2d Cir. 1999). The "severe or pervasive" standard "has objective and subjective elements: the misconduct shown must be 'severe or pervasive enough to create an objectively hostile or abusive work environment,' and the victim must also subjectively perceive that environment to be abusive." *Alfano*, 294 F.3d at 374 (internal citation omitted). Moreover, "incidents must be more than episodic; they must be sufficiently continuous and concerted in order to be deemed pervasive."' *Id.* (quoting *Perry v. Ethan Allen, Inc.*, 115 F.3d 143, 149 (2d Cir. 1997)).

New York state courts have held that the NYCHRL does not operate as a "general civility code," and an employer is not liable for harassment if "the conduct complained of consists of nothing more than what a reasonable victim of discrimination would consider `petty slights and trivial inconveniences.'" *Williams v. New York Ciry Hous. Auth.*, 61 A.D.3d 62, 79-80 (1st Dep't 2009) (quoting *Oncale v. Sundowner Offshore Sews.*, 523 U.S. 75, 81 (1998)).

Additionally, a plaintiff alleging a hostile work environment "must demonstrate that the conduct occurred because of a protected characteristic." *Alfano*, 294 F.3d at 374. As the Second Circuit observed in *Alfano*:

> Everyone can be characterized by sex, race, ethnicity, or (real or perceived) disability; and many bosses are harsh, unjust, and rude. It is therefore important in hostile work environment cases to exclude from consideration personnel decisions that lack a linkage or correlation to the claimed ground of discrimination. Otherwise, the federal courts will become a court of personnel appeals.

*Id.*, 294 F.3d at 377.

The conduct alleged by Plaintiff, even if taken at face value, does not suffice to establish a prima facie case of hostile work environment. First of all, there is no evidence that Plaintiff was subjected to derogatory, humiliating or offensive comments or physically threatening behavior "because of her race or age." Even if the passing remark by Mr. Greene was directed at Plaintiff, such an isolated remark does not support a hostile work environment claim. *Pagan v. N.Y. State Div. of Parole*, 2003 U.S. Dist. LEXIS 20752, at *19 (S.D.N.Y. Nov. 18, 2003) (colleague's reference to plaintiff as a "fat Puerto Rican" on two occasions "clearly does not amount to the sort of 'extremely serious' behavior required to give rise to a hostile work environment"); *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (there must be "more than a few isolated incidents of racial enmity...meaning that instead of sporadic racial slurs, there must be a steady barrage of opprobrious racial comments") (internal quotations and alterations omitted). The alleged conduct cannot be characterized as "severe or pervasive," as Plaintiff cannot demonstrate that her workplace was "severely permeated with discriminatory intimidation, ridicule, and insult." *Alfano*, 294 F.3d at 373. Plaintiff has failed to provide evidence that she was subject to "physically threatening or humiliating" behavior, or that the alleged conduct "unreasonably interfered with [P]laintiff's work" or caused psychological harm. *Richardson*, 180 F.3d at 437.

The Second Circuit has held that conduct more severe than that alleged by Plaintiff does not constitute "severe or pervasive" harassment. *Mormol v. Costco Wholesale Corp.*, 364 F.3d 54, 59 (2d Cir. 2004) (no unlawful harassment where supervisor repeatedly demanded sex from employee, threatened to fire her, made her return early from vacation, and cut her work hours); *Quinn v. Green Tree Credit Corp.*, 159 Fad 759, 768 (2d Cir. 1998) (no unlawful harassment where colleague told plaintiff she had "been voted the 'sleekest ass' in the office" and

18

deliberately touched plaintiff's breasts). See also *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (finding that plaintiff "has not presented evidence of a steady barrage of opprobrious racial comment, as required to show a racially hostile work environment" despite allegations that two coworkers made racial slurs and jokes at plaintiff's expense, including referencing the Klu Klux Klan and using the "N word").

Plaintiff's hostile work environment claim under the NYCHRL likewise fails. In *Short v. Deutsche Bank Sec., Inc*., 79 A.D.3d 503, 504 (1st Dep't 2010), plaintiff complained that her supervisor "created a 'misogynistic culture' in which men entertained clients at strip clubs and that all four female salespeople who were in the department when she arrived had left by 2004." The Court in *Short* held, however, that plaintiff s complaints "were nothing more than non-actionable petty slights and minor inconveniences, which in any event may be viewed by a reasonable employee as a function of [her supervisor's] management style, unrelated to gender discrimination." *Id*., 79 A.D.3d at 506. *See also Kolenovic v. ABM Indus., Inc*., 2012 N.Y. Misc. LEXIS 3560, at *15 (Sup. Ct. N.Y. Co. July 23, 2012) (supervisor's repeated references to plaintiff as "bitch" and comments about her appearance do not constitute harassment).

Accordingly, Plaintiff's hostile work environment claims should be dismissed.

### B.    The Record Is Devoid of Tangible Support for Plaintiff's Claims

As the Second Circuit made clear in *Alfano*, there is both an objective and a subjective element to a hostile work environment claim. *Id*., 294 F.3d at 374. Although Plaintiff's testimony alone may be enough to satisfy the *subjective* element of a hostile work environment claim, it cannot satisfy the *objective* requirement. As the Supreme Court stated, "[w]hether an environment is 'hostile' or 'abusive' can be determined only by looking at all the circumstances." *Harris v. Forklift Sys*., 510 U.S. 17, 23 (1993). Moreover, a plaintiff's "'bald assertions' cannot

overcome a motion for summary judgment, and the court must have 'some basis to believe that [the plaintiff's] version of the relevant events is not fanciful.'" *Shankle*, 2009 U.S. Dist. LEXIS 88293, at *7 (citing *Podell v. Citicorp Diners Club*, 112 F.3d 98, 101 (2d Cir. 1997)).

Other than a single incident in which Mr. Greene wrote an apology letter to Plaintiff, the record lacks any support for Plaintiff's allegations. The lack of evidentiary support is fatal to Plaintiff's hostile work environment claim, as Plaintiff fails cannot establish an issue of fact as to whether the conduct complained of was "sufficiently severe and pervasive." *Richardson*, 180 F.3d at 437.

While the record contains emails from resigning employees complaining about Plaintiff's behavior, the record lacks written complaints - - by Plaintiff or anyone else - - about racism or Mr. Greene's behavior generally. (SUMF ¶ 43)

Additionally, undisputed evidence presented by Wenig Saltiel LLP's IT professional, Ben Serebin, establishes that the firm's content filter would have prevented Mr. Greene from accessing the websites which Plaintiff claims Mr. Greene frequently visited. (SUMF ¶ 28) In addition, Mr. Serebin conducted a search of all websites visited through Mr. Greene's computer, yet found none that corresponded to a list of keywords provided by Plaintiff's counsel. (SUMF ¶ 27)

Furthermore, Morgan Mindell - - a former Wenig Saltiel employee who was involuntarily terminated (and whose time at the firm overlapped with Plaintiff's employment) - - testified that he never observed Mr. Greene make any racist comments, nor did Mr. Mindell witness Mr. Greene watching any of the types of videos referenced in the Complaint. (SUMF ¶ 33) Rather, Mr. Mindell testified that the office was diverse, and that "to the best of my recollection I don't think there was the atmosphere of discrimination and that's why I said the

lawsuit [filed by Plaintiff] seemed ridiculous." (SUMF ¶ 34)

Finally, Plaintiff's own deposition testimony only reinforces the lack of a genuine factual dispute regarding the existence of a hostile work environment. Throughout her deposition, in response to questions that were very straightforward and not open to misunderstanding, Plaintiff repeatedly stated that "I don't understand that question, therefore, I'm not sure how to answer." (SUMF ¶¶ 38 – 45) For example, the following exchange occurred as Plaintiff's deposition:

> Q. So you know you texted Mr. Saltiel about racist comments of Ira Greene and texted them to Mr. Saltiel?
>
> A. Yes.
>
> Q. Where are text messages? Or do you not understand the question?
>
> A. Therefore, I'm not sure how to answer it.
>
> Q. So you don't know where the text messages are?
>
> A. Again, I'm not clear on your question, therefore, I'm not sure how to answer it.
>
> Q. Did you save the text messages?
>
> A. Again, I'm not understanding your question, therefore, I'm not sure how to answer it.
>
> Q. Do you remember the nature of the text message?
>
> A. Again, I'm not sure of your question. Therefore, I'm not sure how to answer it.
>
> Q. You indicated that you recall specifically texting Mr. Saltiel about racist comments of Ira Greene. If you don't understand the question, how do you recall that you texted him those messages?
>
> MR. CALLISTE: Objection.
>
> A. I don't understand your question, therefore, I'm not sure how to answer it.
>
> Q. How many times did you text Mr. Saltiel about racist comments of Ira Greene?
>
> A. Off the top of my head, I cannot tell you.

21

(SUMF ¶ 45) A similar exchange occurred later about an email that Plaintiff alleged she sent, but could not produce, and which was not found in a search of Moving Defendants' records. (SUMF ¶¶ 38 – 42)

Taking together the foregoing, Plaintiff has failed to establish the existence of a hostile work environment, and her claims should be dismissed.

## **CONCLUSION**

For all of the foregoing reasons (and those set forth in the accompanying papers forming a part of Moving Defendants' motion for summary judgment), Moving Defendants respectfully request that: (a) their motion for summary judgment be granted in its entirety; (b) Plaintiff's Complaint be dismissed in its entirety; (c) judgment be entered in favor of Moving Defendants; (d) costs, fees, and disbursements be awarded to Moving Defendants; and (e) such other and further relief be granted in favor of Moving Defendants.

Dated: New York, New York
      March 24, 2023

                **WENIG SALTIEL LLP**

                *Attorneys for Moving Defendants*

                By: /s/ Howard S. Bonfield
                321 Broadway, 2nd Floor
                New York, New York 10007